Andrew M. Calamari
Sanjay Wadhwa
Michael Paley
Preethi Krishnamurthy
Haimavathi V. Marlier*
Peter Pizzani
Justin P. Smith
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0116 (Krishnamurthy)
*Not admitted to the U.S. District Court for the Eastern District of New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

            Plaintiff,

-against-

ROBERT BANDFIELD,
ANDREW GODFREY, and
IPC CORPORATE SERVICES LLC,

            Defendants.

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against defendants Robert Bandfield ("Bandfield"), Andrew Godfrey ("Godfrey"), and IPC Corporate Services LLC ("IPC") (together, the "Defendants"), alleges:

## SUMMARY

1. Since at least 2011, Defendants have operated an offshore business designed to hide their clients' assets behind a curtain of opaque Caribbean entities. Bandfield and IPC, with Godfrey's assistance, assumed nominal ownership of their clients' stock in thinly-traded, microcap issuers to

help the clients evade United States securities laws, including laws requiring beneficial owners of more than 5% of certain issuers' stock to publicly report their holdings to the Commission.

2. Bandfield, Godfrey, and IPC — a limited liability company Bandfield organized under the laws of Nevis, in the West Indies — used Belize as their base. Their clients paid them substantial fees to establish a pyramid of limited liability companies ("LLCs") and international business companies ("Companies") organized under the laws of Nevis and Belize.

3. At the pyramid's base stood the Companies, which owned the client's stock holdings in microcap issuers. Bandfield and IPC, which Bandfield controlled, provided each client with multiple Companies and helped transfer the client's stock holdings to the client's designated Companies.

4. Bandfield, Godfrey, and IPC advised clients to divide their ownership of a single issuer's stock into several different Companies, such that no single Company held more than 5% of a single microcap issuer's stock — the trigger for reporting beneficial ownership to the Commission.

5. Bandfield and IPC also provided each client with one or more LLCs, which in turn each owned one or more of the same client's designated Companies.

6. Each LLC had two legal owners: one owned 99% of the LLC, and the other owned the remaining 1%. Bandfield and IPC installed various IPC employees or others they controlled as the owner of the 99% portions of the LLCs. Bandfield ensured that IPC owned the remaining 1% of each LLC.

7. Following these arrangements, the IPC clients retained no legal ownership of the Companies or LLCs.

8. As Bandfield, Godfrey, and IPC knew and intended, this structure transferred ownership of the Companies' holdings of stock in microcap issuers from IPC's clients to IPC, which

2

Bandfield controlled, and its nominees. IPC and Bandfield were therefore beneficial owners of the microcap stock held by the Companies.

9. The federal securities laws and regulations required Bandfield and IPC, as beneficial owners of the more than 5% of certain equity securities registered with the Commission, to report to the Commission and the investing public their acquisition or ownership of such securities and certain other information. By failing to do so, they violated the federal securities laws. Godfrey aided and abetted those violations.

## VIOLATIONS

10. By virtue of the foregoing conduct and as alleged further herein, IPC and Bandfield, directly or indirectly, singly or in concert, have engaged in acts, practices, transactions, and courses of business that violated Section 13 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78m] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1].

11. Bandfield is also liable, in the alternative to his liability as a primary violator, under Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] for aiding and abetting IPC's violations of Section 13 of the Exchange Act and Rule 13d-1 thereunder, or under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] as a control person of IPC for those violations by IPC.

12. By virtue of the foregoing conduct and as alleged further herein, Godfrey is liable under Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] for aiding and abetting IPC's and/or Bandfield's violations of Section 13 of the Exchange Act and Rule 13d-1 thereunder.

13. Unless Defendants are restrained and enjoined, they will again engage in the acts, practices, transactions, and courses of business set forth in this Complaint and in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

14. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

15. The Commission seeks a final judgment:

   a) Permanently enjoining Defendants from violating Section 13 of the Exchange Act pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)]);

   b) Ordering Defendants to disgorge, with prejudgment interest thereon, their ill-gotten gains stemming from their Section 13 violations;

   c) Ordering Defendants to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

   d) Permanently prohibiting Bandfield and Godfrey from participating in any offering of a penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and

   e) Any other relief the Court may deem just and appropriate.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. The Defendants, directly or indirectly, singly or in concert, have made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of businesses alleged herein.

17. Venue lies in the Eastern District of New York, pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business constituting the violations of law alleged in this Complaint occurred within the Eastern District of

New York, including one or more telephone calls from Godfrey into the Eastern District of New York.

## DEFENDANTS

18. IPC is a limited liability company formed under the laws of Nevis, with its principal place of business in Belize City, Belize.

19. Bandfield is a United States citizen who resides in Oregon and Belize. He founded and controls IPC and has signed corporate resolutions on behalf of the Companies.

20. Godfrey is a citizen and resident of Belize who has managed IPC and reported to Bandfield since at least 2012. He has served as a third-party nominee, selected by IPC and Bandfield, to own certain LLCs, which in turn own one or more Companies.

## FACTS

### A.  Defendants' Business

21. According to its website, IPC has been "confidentially providing offshore services since 1991." Its services include "Offshore Company Formation," "Nominee Services," "Trust Formation," "Licensed Trustee Services," "Full Banking Services," "Offshore Credit Cards," and "Offshore Brokerage (Securities) Accounts."

22. On behalf of their clients, Bandfield, Godfrey, and IPC create a pyramid of LLCs and Companies formed under the laws of Nevis and Belize in order to transfer ownership of securities, including microcap stocks, from the clients to IPC, Bandfield, and IPC's nominees.

23. Bandfield and Godfrey explained the structure of the LLCs and Companies in several recorded meetings and conversations with an undercover federal agent (the "Agent"), who posed as a client. The conversations and meetings occurred between approximately January 2013 and April 2014.

24. As Bandfield and Godfrey explained to the Agent, IPC has established and maintains a large stable of LLCs, formed under the laws of Nevis, and Companies, formed under the laws of Belize, available for immediate client use.

25. As Bandfield and Godfrey further explained, each client selects one or more Nevis LLCs from IPC's list of available LLCs, each of which in turn owns one or more Belize Companies the client similarly selects from IPC's list.

26. According to Bandfield and Godfrey, IPC uses Nevis LLCs to hold the Belize Companies at least in part because Nevis law imposes significant barriers on regulators or others who seek to identify the individuals behind the Companies (IPC's clients). For example, Godfrey explained to the Agent that it would take "about eight years," including significant litigation in Nevis, for someone to identify the IPC client behind a Company owned by a Nevis LLC.

27. The IPC client himself legally owns neither the Belize Companies nor the Nevis LLCs he selects, as Bandfield and Godfrey told the Agent.

28. Bandfield instead appoints a nominal owner, or nominee, to whom he allocates a 99% ownership share in the Nevis LLCs. The nominee is typically an employee of IPC or an affiliate — for example, Bandfield explained that the Agent's designated LLC could use an IPC security guard as a nominee — and always someone IPC and Bandfield control. On occasion, Godfrey has served as a nominee.

29. IPC keeps the remaining 1% ownership stake, which Bandfield controls, in the Nevis LLC.

30. As Bandfield explained, he and IPC maintain control over the nominee in at least several ways. First, when the nominee is appointed, Bandfield has the nominee sign an undated letter of resignation that Bandfield can later date and enforce if he needs to replace the nominee for any reason. Second, as Bandfield explained, Nevis law requires all the owners of an LLC to agree on any

6

corporate action, so IPC's 1% ownership share gives Bandfield a controlling vote. Bandfield explained: "we make sure that we have control of" the nominee.

31. Each Nevis LLC in turn owns one or more of the same client's Companies.

32. Bandfield and IPC then help their clients transfer shares of microcap issuers' stock into the Companies' names and open accounts for each Company at one or more offshore broker-dealers. These transfers allow IPC to trade stocks held in the Companies' accounts.

33. As Bandfield, Godfrey, and IPC advised the Agent, they urge clients to divide their ownership of a single issuer's stock into several different Companies, such that no single Company holds more than 5% of a single issuer's stock.

34. For example, Bandfield told the Agent: "[I]f you all of sudden dump twenty percent [of an issuer's stock] into [one offshore broker-dealer], and now we got [the offshore broker-dealer] trading twenty percent of the stock we run into problems, they have to make sure that they are always below the five percent." Bandfield therefore recommends that the client use multiple Companies, each of which owns less than 5% of a particular issuer's stock. Bandfield also recommends that the client open accounts with multiple, offshore broker-dealers to ensure that no particular broker-dealer itself trades more than 5% of an issuer's stock through multiple Companies' accounts that together exceed 5% ownership of an issuer's stock.

35. Bandfield similarly advised the Agent to split a hypothetical 6% ownership stake in an issuer into two Companies, one with a 4% ownership stake and the other with a 2% stake. He recommended: "[D]on't put over five percent. . . . [W]hy report that?" In response to the Agent's question about how many Companies he would need to handle a 20% ownership stake in a single stock, Bandfield said the Agent would need five Companies and would need to spread out the trading across at least three offshore broker-dealers.

7

36. Using this structure of LLCs and Companies, the IPC client cedes legal ownership and legal control of his or her shares of stock to IPC, which Bandfield controls. The client must trust Bandfield and IPC to carry out his instructions with respect to the trading and disposition of stocks and funds in the Companies' accounts.

37. As Bandfield explained to the Agent, the client can give all trade requests to IPC, which can direct the securities trades. Alternatively, Bandfield and IPC can provide the client with limited trading authority over the stock held by the Companies, which allows the client to contact the offshore broker-dealers directly to place trade orders. Under the latter arrangement, Bandfield structures trading profits that flow to the client as purported consulting fees.

38. IPC itself does not keep any trading profits or bear any trading losses. The client receives the trading profits and must bear any trading losses. The client simply pays IPC a fee for its services.

39. Notwithstanding this arrangement, Bandfield and Godfrey both emphasize that legal ownership and control rest with IPC. For example, Bandfield explained to the Agent that the client "never control[s] anything . . . control is a bad word around here." Similarly, Godfrey explained to the Agent that the Commission "can't get" at the client's identity, because "[y]ou don't own it so how can they [the Commission and the United States Internal Revenue Service] link it to you[?]."

40. Their legal control over the Corporations' stock holdings requires Bandfield and IPC to participate in offerings of such microcap shares, including penny stocks. Bandfield and IPC provide and send corporate resolutions on behalf of IPC Companies to the transfer agents for microcap issuers, including penny stock issuers. Bandfield, on behalf of IPC, and the IPC nominee both sign the corporate resolutions. The resolutions provide authority, on behalf of the Companies, to transfer and assign ownership of the issuers' shares, including penny stocks. These resolutions are often accompanied by documents actually transferring ownership of the shares.

41. Bandfield has also sought and obtained the removal of restrictive legends on stock certificates, which enable the Companies and the clients to sell penny stocks and other microcap stocks. Bandfield has obtained attorney opinion letters in part by representing that IPC Companies were unaffiliated with the issuer and submitting attorney opinion letters to the transfer agents. As a result, the transfer agents have issued unrestricted shares in the names of entities or individuals specified by IPC and Bandfield, allowing them to freely trade the shares in the market.

42. IPC and Bandfield therefore hold (or share with their clients) the power to vote, or direct the voting of, the shares of stock held in the Companies' names and the power to dispose, or direct the disposition of, such stock.

43. Indeed, Godfrey uses the term "beneficial owner" to describe IPC's ownership of the LLCs and the Companies. For example, in a telephone conversation between Godfrey and the Agent, after Godfrey confirmed that the Agent was American, Godfrey explained: "The LLC is going to own the local IBC [Company]. Okay? And we are going to put a *beneficial owner* on that LLC. It's going to be somebody from my office so that your name is not on it." In a later conversation with the Agent, Godfrey said: "One LLC, one IBC [Company], which is the Belize one. We'll put a *beneficial owner* on there for you." Godfrey then explained that the fee to be paid to IPC covered "the *beneficial owner* that we'll put on there for you." (Emphases added.)

**B.   IPC and Bandfield's Beneficial Ownership of Certain Equity Securities**

44. Endeavor IP, Inc. ("Endeavor") is a Nevada corporation whose common stock is quoted on OTC Links, a United States inter-dealer quotation service, under the ticker "ENIP." From at least June 20, 2013 to the present, Endeavor's common stock has been a penny stock, under the definition set forth in Section 3(a)(51)(A) of the Exchange Act [15 U.S.C. § 78c(a)(51)(A)] and Rule 3a51-1 thereunder [17 C.F.R. § 240.3a51-1], because , among other things, it traded below five dollars per share and was not listed on a national securities exchange.

9

45. Using the same general structure of Nevis LLCs and Belize Companies described above, IPC and Bandfield beneficially owned or became beneficial owners of more than 5% of Endeavor's outstanding common stock.

46. In approximately 2013, IPC and Bandfield began assisting their client with transferring shares of Endeavor common stock to the Belize Companies owned, directly or indirectly, by IPC and its nominees.

47. Bandfield, on behalf of IPC, corresponded directly with Endeavor's transfer agent to facilitate the transfer of shares.

48. For example, on August 6, 2013, an IPC employee emailed certificates of incorporation for each of four Belize Companies to Endeavor's transfer agent to facilitate the transfer of 400,000 shares of Endeavor common stock from a prior owner to the Belize Companies.

49. On October 23, 2013, Endeavor filed a Form 8A-12g with the Commission, which became effective upon filing and has not since been terminated. Endeavor thereby registered its common stock under Section 12 of the Exchange Act [15 U.S.C. § 78l]. The Form 8A-12g provides that each share of Endeavor common stock entitles its shareholder to one non-cumulative vote per share on all matters on which shareholders may vote.

50. As of October 23, 2013, certain IPC Companies (or similar corporate entities owned directly or indirectly by IPC and one or more of its nominees) owned more than 40% of Endeavor's outstanding common stock.

51. By December 31, 2013, several IPC Companies (or similar corporate entities owned directly or indirectly by IPC and one or more of its nominees) together owned more than 25% of Endeavor's outstanding common stock.

52. Neither Bandfield nor IPC has ever filed a Schedule 13D or Schedule 13G with the Commission to disclose holdings or acquisitions of more than 5% of Endeavor's outstanding common stock. Nor has anyone else affiliated with IPC, including IPC's client, filed such a schedule.

53. From at least 2013 to the present, IPC and Bandfield acquired beneficial ownership of more than 5% of the outstanding common stock of at least one more issuer that was registered under Section 12 and whose common shares carried voting rights. Yet neither IPC nor Bandfield nor any other individual or entity affiliated with IPC has filed a required Schedule 13D or 13G with the Commission.

## FIRST CLAIM FOR RELIEF
### Violations of Exchange Act Section 13 and Rule 13d-1 Thereunder
### (Against IPC and Bandfield)

54. Paragraphs 1 through 53 are re-alleged and incorporated by reference as if fully set forth herein.

55. Section 13(d)(1) of the Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1(a) thereunder [17 C.F.R. § 240.13d-1(a)] together require any person who acquires, directly or indirectly, the beneficial ownership of more than 5% of any equity security of a class registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] to file a disclosure statement on Schedule 13D within ten days.

56. Section 13(g) of the Exchange Act [15 U.S.C. § 78m(g)] and Rule 13d-1(d) thereunder [17 C.F.R. § 240.13d-1(d)] together require any person who (i) is a beneficial owner, as of the last day of any calendar year, of more than 5% of an equity security registered under Section 12 of the Exchange Act and (ii) acquired the shares before the security became registered, to file a disclosure statement on Schedule 13G within forty-five days after the calendar year ends.

57. IPC and Bandfield, after acquiring directly or indirectly the beneficial ownership of more than 5% of classes of equity securities registered pursuant to Section 12 of the Exchange Act

11

[15 U.S.C. § 78l], failed to file with the Commission statements containing the information required by Schedule 13D and/or Schedule 13G [17 C.F.R. § 240.13d-101 or § 240.13d-102] within the time period prescribed.

58. By reason of the activities described herein, IPC and Bandfield, singly or in concert, directly or indirectly, violated, and unless enjoined and restrained will continue to violate, Section 13 of the Exchange Act [15 U.S.C. § 78m] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1].

### SECOND CLAIM FOR RELIEF
### Aiding and Abetting Violations of Exchange Act Section 13 and Rule 13d-1 Thereunder
### (Against Bandfield and Godfrey)

59. Paragraphs 1 through 58 are re-alleged and incorporated by reference as if fully set forth herein.

60. Based upon the conduct alleged herein, IPC and Bandfield violated Section 13 of the Exchange Act [15 U.S.C. § 78m] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1].

61. As alleged herein, Bandfield knowingly or recklessly provided substantial assistance to IPC in committing such violations. Godfrey knowingly or recklessly provided substantial assistance to IPC and/or Bandfield in committing such violations.

62. By reason of the foregoing and pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Bandfield and Godfrey aided and abetted, and unless enjoined and restrained will continue to aid and abet, violations of Section 13 of the Exchange Act [15 U.S.C. § 78m] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1].

### THIRD CLAIM FOR RELIEF
### Control Person Liability under Exchange Act Section 20(a)
### (Against Bandfield)

63. Paragraphs 1 through 62 are re-alleged and incorporated by reference as if fully set forth herein.

64. Based upon the conduct alleged herein, IPC violated Section 13 of the Exchange Act [15 U.S.C. § 78m] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1].

65. As alleged herein, Bandfield directly or indirectly controlled IPC and was a culpable participant in IPC's violations of Section 13 of the Exchange Act [15 U.S.C. § 78m] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1]. Pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], Bandfield is liable as a control person for IPC's violations of those provisions.

## **RELIEF SOUGHT**

**WHEREFORE**, the Commission respectfully requests that the Court issue a Final Judgment:

### I.

Permanently enjoining Defendants from violating Section 13 of the Exchange Act [15 U.S.C. § 78m] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1];

### II.

Ordering Defendants to disgorge, with prejudgment interest thereon, all ill-gotten gains;

### III.

Ordering Defendants to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

### IV.

Imposing a permanent bar on Bandfield and Godfrey from participating in any offering of a penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and

V.

Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
September 9, 2014

*Sanjay Wadhwa*
Sanjay Wadhwa
Andrew M. Calamari
Michael Paley
Preethi Krishnamurthy
Haimavathi V. Marlier*
Peter Pizzani
Justin P. Smith
SECURITIES AND EXCHANGE
    COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0116 (Krishnamurthy)
KrishnamurthyP@sec.gov

*Not admitted to the U.S. District Court for
    the Eastern District of New York

14